on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries. The protests were sustained to this extent.

**No. 50186.**—Protest 111860–K of Charles M. Siebenberg (New York).

Opinion by CLINE, J. Following the authorities cited in Abstract 15400 the court dismissed the protest.

BEFORE THE FIRST DIVISION, MAY 17, 1945

**No. 50187.**—Protests 963323–G, etc., of Brier Mfg. Co. et al. (New York).

Opinion by OLIVER, P. J. In accordance with stipulation of counsel that the beads in question are similar in all material respects to those the subject of *Eitinger Bead Co.* v. *United States* (13 Cust. Ct. 50, C. D. 867), certain of the items were held dutiable at 35 percent under paragraph 1503, and others at 20 percent under the same paragraph as modified by T. D. 49458.

**No. 50188.**—Protest 58499–K of Louis Wolf & Co., Inc. (New York).

Opinion by OLIVER, P. J. At the trial a Government chemist testified on behalf of the plaintiff that he had analyzed a sample of the merchandise and found that it consisted entirely of synthetic phenolic resin. Since it is well established that articles composed entirely of synthetic phenolic resin are neither dutiable directly nor by similitude under paragraph 33, the merchandise was held dutiable at 20 percent under paragraph 1558 as claimed. (Abstracts 49907, 49595, and 45795 cited.)

**No. 50189.**—Protests 69283–K, etc., of Fan Co. et al. (New York).

Opinion by OLIVER, P. J. At the trial a Government chemist testified on behalf of the plaintiffs that he had analyzed samples of the merchandise and found that they consisted entirely of synthetic phenolic resin. The record in Abstract 49907 was admitted in evidence and made a part of the record herein. On the record presented and following the authority cited the merchandise in question was held dutiable at 20 percent under paragraph 1558 as claimed.

**No. 50190.**—Protests 71884–K, etc., of China Importing Co. et al. (New York).

Opinion by OLIVER, P. J. At the trial a Government chemist testified on behalf of the plaintiffs that he had analyzed samples of the merchandise and found that they consisted entirely of synthetic phenolic resin. The record in Abstract 49907 was admitted in evidence and made a part of the record herein. On the record presented and following the authority cited the merchandise in question was held dutiable at 20 percent under paragraph 1558 as claimed.

**No. 50191.—Protest 79758–K of I. Albert Co. (New York).**

OLIVER, Presiding Judge: The merchandise involved in this case consists of certain glass (and metal) lighting fixtures described on the invoice as "Lanternes." There were no samples before the court but photographs of the imported articles are in evidence (illustrative exhibit A). They were classified and held dutiable at 40 percent ad valorem under paragraph 218 (c), Tariff Act of 1930, as modified by the Czechoslovakian Trade Agreement (T. D. 49458), as "other illuminating articles." They are claimed dutiable at 30 percent ad valorem under the same paragraph, as modified, under the provision for "chandeliers." Paragraph 218 (c), as modified, insofar as pertinent, reads as follows:

PAR. 218. (c) Illuminating articles of every description, finished or unfinished, wholly or in chief value of glass, for use in connection with artificial illumination:
Prisms, glass chandeliers, and articles in chief value of prisms, 30 percent ad valorem

\*    \*    \*    \*    \*    \*    \*

Others, 40 percent ad valorem.

The issue thus presented to us for decision is whether or not these lighting fixtures are "chandeliers" as that term is used in paragraph 218 (c).

In the condition as imported these lanterns had no chains attached but had a hole in the top to receive a fitting which was installed after importation. They were oval or pear shaped, measuring 10 inches, 14 inches, and 16 inches, consisting, apparently, of a metal frame in which various shapes of glass were fitted. They were designed to be used with one light and were usually suspended from the ceiling in small hallways or vestibules where a small fixture was desired. It seems that similar lanterns were also used as wall brackets.

Plaintiff's proprietor and sales manager both testified that, in their opinion, a chandelier was "any article or fixture that is suspended from the ceiling and gives off light." On cross-examination the sales manager stated "that any type of lantern, providing it was an article that emitted light and was suspended from the ceiling, was a chandelier." Both of these witnesses denied that a chandelier must have arms or branches to partake of that designation.

The Government's contention that these articles are not chandeliers was supported by the testimony of five witnesses. They all agreed with the definition of a chandelier as given by Funk & Wagnalls, reading: "1. A branching frame, generally of ornamental design, hanging from a ceiling or roof, to support lights."

It is evident that all chandeliers are lighting fixtures but all lighting fixtures designed to be hung from a ceiling are not chandeliers. These fixtures were bought as lanterns (or "lanternes") and were frequently sold under the same description. They are not branched. They are not used with more than one light. They may be hung from the ceiling or used as a wall bracket suspended from a proper fixture.

There is here no claim to a commercial meaning different from the ordinary meaning of the term. In addition to the Funk & Wagnalls definition quoted above, other definitions of chandeliers are as follows: